[No. 13882.   Department Two. — November 3, 1890.]

## IN THE MATTER OF THE ESTATE OF A. C. WHIT-COMB, DECEASED.

CONSTRUCTION OF WILL — INTENTION OF TESTATOR. — In the exposition of a will, the intention of the testator, expressed in his will, must prevail, provided it be consistent with the rules of law.

ID. — RECOMMENDATION — TRUST. — A will devising real property, and recommending the devisee to leave his portion thereof, after his death, and that of his wife, in trust for his son, and the children or descendants of such son, if any be alive at his death, and if there be none so alive, to Harvard College, does not make such recommendation obligatory, or limit the estate, or create a trust in favor of Harvard College, it appearing that the testator was a lawyer who understood fully what was necessary in order to vest a trust estate, and what he desired done with his property, and it further appearing, from the whole of the will, taken together, that when he intended trusts to exist, he said so in plain language, and when he gave persons property and made recommendations concerning it, he meant to leave them free to act upon his advice or not, as they saw fit, but did not intend in any way to limit the estates he had bequeathed them.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*Smith & Pomeroy*, for Harvard College, Appellant.

Words of entreaty, recommendation, or wish, or precatory words, will create a trust, where the objects and beneficiaries of the trust, and the property to be subjected to the trust, are sufficiently identified, if there be nothing in the will to forbid such construction. (*Warner* v. *Bates*, 98 Mass. 276; *Colton* v. *Colton*, 127 U. S. 300; 2 Story's Eq. Jur., sec. 1068 a; 1 Jarman on Wills, 385; *Harrison* v. *Harrison*, 2 Gratt. 1; 44 Am. Dec. 372, note.) If the implication of the trust from precatory words is not repelled by making the devise expressly "unfettered and unlimited" (1 Jarman on Wills, 388), or by giving the devisee express power to dispose of such part of the property as he pleases, and merely requesting him to

distribute the residue (2 Story's Eq. Jur., sec. 1073; 2
Lead. Cas. Eq. 1839; *Second Reformed etc. Church* v. *Dis-brow,* 52 Pa. St. 219; note to *Harrison* v. *Harrison,* 44
Am. Dec. 376), or by distinctly giving discretion to the
devisee (2 Story's Eq. Jur., sec. 1070; *Gilbert* v. *Chapin,*
19 Conn. 348; 1 Lewin on Trusts, 135), words of gift
and recommendation simply, unaccompanied by any
qualificative terms, will be as fully and distinctly creat-
ive of a trust as if the words "trustee" or "upon trust"
had been used. (*Colton* v. *Colton,* 127 U. S. 310; *Knight*
.v. *Knight,* 3 Beav. 148.) A precatory trust has been im-
posed where words of inheritance were used. (*Harrison*
v. *Harrison,* 2 Gratt. 1; 44 Am. Dec. 363; *Knox* v. *Knox,*
59 Wis. 172; 48 Am. Rep. 487.) The word "give," in a
devise, has the same force, and no other, as if followed by
words of inheritance. (Civ. Code, sec. 1329; 3 Jarman
on Wills, 47, 48, note *t; Colton* v. *Colton,* 127 U. S. 300.)
The interest to be taken by A. D. Tuttle's wife is not
indefinite, but is an estate for life by implication. (8
Washburn on Real Property, 694; 4 Kent's Com. 541;
2 Jarman on Wills, 532.) The devise in question be-
longs to that class in which the precatory words limit
the estate of the devisee to a life interest, and impose
on him an obligation in the nature of a power in trust
to dispose of the property by will in the way directed
by the testator. (*Harding* v. *Glyn,* 1 Atk. 469; *Malim* v.
*Keighley,* 2 Ves. Jr. 529; *Pierson* v. *Garnet,* 2 Brown C. C.
38; *Forbes* v. *Ball,* 3 Mer. 437; 2 Sugden on Powers, 161;
*Knox* v. *Knox,* 59 Wis. 172; 48 Am. Rep. 487; *Brown* v.
*Higgs,* 8 Ves. Jr. 574; and see 1 Story's Eq. Jur., sec.
98; 1 Perry on Trusts, sec. 248–251; 2 Lead. Cas. Eq.
1848, tit. Power in the Nature of a Trust.) It is only
when the holder of the power fails or refuses to act that
the court interposes to save the trust. (2 Pomeroy's Eq.
Jur., sec. 1002; 1 Perry on Trusts, sec. 250; *Gower* v.
*Mainwaring,* 2 Ves. 87; *Bull* v. *Bull,* 8 Conn. 48; 20 Am.
Dec. 86.) If the portion of the trust in favor of the son

would be illegal as creating a passive trust (Civ. Code, sec. 857), it is nevertheless good as a limitation of the objects of the trust, and the portion devised upon an illegal trust falls into the residue of the estate, and cannot pass beneficially to the devisee upon whom the trust was attempted to be imposed. (*Briggs* v. *Penny*, 3 Macn. & G. 546; 1 Perry on Trusts, sec. 113, note; and see 1 Jarman on Wills, 395; *Ingram* v. *Fraley*, 29 Ga. 553; *Padmore* v. *Gunning*, 7 Sim. 644; *Bernard* v. *Minshull*, Johns. 286.) The fact that technical words of trust are used in respect to other devises is not entitled to much weight. (*Warner* v. *Bates*, 98 Mass. 276; *Knox* v. *Knox*, 59 Wis. 172; 48 Am. Rep. 491; *Colton* v. *Colton*, 127 U. S. 319.) The word "recommend" may be obligatory in respect to one devise, and not so in respect to another. The context must fix the meaning. The fact that Mr. Whitcomb was a lawyer, and understood words of trust and limitation, is immaterial. (*Knox* v. *Knox*, 59 Wis. 172; 48 Am. Rep. 491.)

*Edward J. Pringle*, and *Jerome B. Lincoln*, for Respondent.

The doctrine of precatory trusts was intemperately brought into the law of England from the Roman law (1 Spencer's Eq. Jur. 435), and in nine cases out of ten, where such a trust has been raised, it was contrary to the expectation of the testator. (1 Redfield on Wills, 714.) The modern doctrine of the American courts is in relaxation of the English rule, and makes the intention of the testator, to be gathered from the whole will, the controlling consideration. (*Lawrence* v. *Cooke*, 104 N. Y. 638; *Colton* v. *Colton*, 127 U. S. 300; *Hess* v. *Singler*, 114 Mass. 59; *Hunt* v. *Hunt*, 11 Nev. 447; *Pennock's Estate*, 20 Pa. St. 278, 279; 59 Am. Dec. 718; *Bowlby* v. *Thunder*, 105 Pa. St. 179; 2 Pomeroy's Eq. Jur., secs. 1014–1017; 1 Perry on Trusts, ed. 1889, secs. 114–116; *Harrison* v. *Harrison*, 2 Gratt. 1; 44 Am. Dec. 372–379, and note;

6 Lawyers' Reports Annotated, 353–356, notes; *Mussoorie Bank* v. *Raynor*, 35 Eng. L. Rep. 259, Moak's Notes.) The relations between the testator and the different objects of his bounty must be considered. (*Lines* v. *Darden*, 5 Fla. 69, 70.) The intention must be sought, in view of the nature and condition of the property. (2 Pomeroy's Eq. Jur., sec. 1016; 2 Spencer's Eq. Jur., 65; *Malim* v. *Keighley*, 2 Ves. Jr. 531.) The words used in the will create no trust, there being no imperativeness in the recommendation. (*Colton* v. *Colton*, 127 U. S. 300; *Williams* v. *Williams*, 1 Sim., N. S., 369; *Hunt* v. *Hunt*, 11 Nev. 447; *Sale* v. *Moore*, 1 Sim. 534; *Johnson* v. *Rowlands*, 5 De Gex & J. 357; *Hood* v. *Oglander*, 34 Beav. 514.) The objects of the alleged trust are uncertain, there being no specification of the estate to be taken by A. D. Tuttle's wife. A devise to one not an heir of the testator, after the death of another devisee, will not raise a life estate by implication in the first devisee. (1 Jarman on Wills, 5th ed., p. 533, note *c;* *Macy* v. *Sawyer*, 66 How. Pr. 384; *Dougherty* v. *Stillwell*, 1 Brad. Ch. 300; *Dale* v. *Dale*, 13 Pa. St. 450.) The trust insisted upon is impossible, because illegal, as A. D. Tuttle could not be required to create a passive trust for his son. (Civ. Code, sec. 857; 1 Pomeroy's Eq. Jur., sec. 153.) The result is, not that the estate goes to the beneficiary free of any trust, but simply that the recommendation goes for naught, and the devise to A. D. Tuttle is absolute.

Foote, C. — This action was instituted for the purpose of construing a will. The appellant's contention is, that the word " recommend," used in the sixth provision thereof, "is obligatory, and that its effect is to limit A. D. Tuttle's interest to a life estate, and to dispose of the remainder by his will, in accordance with the wishes of the testator." The court below disagreed with this desired construction, and from its decree in the premises,

so far as the same affected the property mentioned in the sixth clause of the will, this appeal is taken.

That decree, among other matters, distributed the property in dispute " to the said Adolphus Darwin Tuttle and his son Charles Whitcomb Tuttle, of Hancock, New Hampshire, in fee-simple absolute," and further ordered that George Hagar, who held the legal title of the property in trust, should make conveyance of the same to them. The testator, A. C. Whitcomb, was a lawyer, who had acquired a large property in California. He left the state in 1867, and spent the last twenty years of his life in Paris, adding, while there, a good deal to his fortune. He died in 1888, leaving an estate which was inventoried at over four million dollars. A part of it consists of an equitable thirty-one forty-eighths part, undivided, in the Jimeno Rancho, originally a Spanish grant extending for some miles along the Sacramento River, in Colusa and Yolo counties. It contains about eighteen thousand five hundred acres of land, of which ten thousand acres are in a swamp-land district, a large portion of it at times covered with water. The whole interest in this land, including appurtenances and personal property, was appraised at three hundred and fifty thousand dollars. About twenty-five thousand dollars of this value consists in town lots in the town of Colusa. The taxes upon the rancho were large, and the income proportionately small. It was improved only so far as was necessary to raise crops of hay and grain. Being not profitable, it was thought best to subdivide and sell it, and to that end George Hagar was invested with Whitcomb's title, he (Hagar) holding and owning the other seventeen forty-eighths part. This mere legal estate, held in trust for Whitcomb and his devisees, Hagar admitted in open court, and was willing to abide by the decree thereof, ordering a conveyance to the Tuttles.

The real party contesting here against the decree is Harvard College. Whitcomb had been brought up by

A. D. Tuttle's mother, was much attached to Tuttle, and frequently aided him by gifts of money, and in the education of C. W. Tuttle, the son of A. D. Tuttle, whom Whitcomb wished to be prepared for the sphere in life intended for him, which would come by virtue of a large amount of property which Whitcomb had declared he should leave to him. Whitcomb removed to Paris, as before stated, was there married, and left surviving him two small children, who, with his wife, were his heirs at law. C. W. Tuttle was about twenty-five years of age at the date of this will.

So much of the will as is necessary to this controversy is as follows:—

"I, Adolphus Carter Whitcomb, of the city and county of San Francisco, state of California, United States of America, but temporarily stopping in Paris, France, do make this, my last olographic will and testament:—

"1. I give the San Francisco Protestant Orphan Asylum, and to the Ladies' Protection and Relief Society, both of said San Francisco, each the sum of five thousand dollars, making in all the sum of ten thousand dollars.

"2. I give to Mrs. Sarah Brazer Berry, now or formerly of Washington City, District of Columbia, the sum of five thousand dollars; and, in addition, I release her from all indebtedness to me or my estate, for her kindness to my brother and myself after the May fire of 1861, at said San Francisco.

"3. I give to Adolphus Darwin Tuttle, of Hancock, New Hampshire, and to Henry Foster Whitcomb, of Boston, Massachusetts, or to the survivor of them, one hundred thousand dollars of my Chesapeake and Ohio railroad bonds, to be held by them in trust, nevertheless, to pay over, semi-annually, to my cousin Love Maria Whitcomb Willis, now or lately of Glenora, Yates County, New York, and to her daughter Edith, now or lately married, or to the survivor of them, during their

natural lives, the income therefrom for their own sepa-
rate use and behoof, free from the debts, charge, or con-
trol of their husbands, with the remainder or remainders
thereof to their children or grandchildren *per stirpes*, if
any be alive at the time of their death; and if none be
alive, then the said remainder shall go to my heirs at
law.

"4. I give to my wife, Louise Palmyre Vion Whit-
comb, two hundred thousand dollars ($200,000) of my
Chesapeake and Ohio railroad bonds, and I recommend
her not to dispose of them or to convert them without
the distinct advice of my friend Mr. Bruce.

"5. I give to the town of Hancock, New Hampshire,
for the maintaining of a free public and unsectarian
library, ten thousand dollars of my Chesapeake and Ohio
railroad bonds; and also to the said town the further
sum of ten thousand dollars of said bonds, — one half
thereof, or such part of the said one half as may be con-
sidered necessary, for the reclamation and embellishment
of the Common, so called, in the village of said Han-
cock, and the rest of said ten thousand dollars as a
fund, of which the income shall be used for the increase
and maintenance of said reclamation and embellish-
ment.

"6. I give to my nephew, the said Adolphus Darwin
Tuttle, and to his son, Charles Whitcomb Tuttle, both
of said Hancock, all my interest, either real, personal,
or mixed, in the Jimeno Rancho, so called, wholly or
partially in the counties of Colusa and Sutter, in said
California, and all mortgages, contracts, debts, or dues
arising therefrom; and I recommend to my said nephew
to leave his portion thereof, after his own death, and the
death of his wife, in trust for the said Charles Whitcomb
Tuttle, and to his children or descendants, if any be alive
at the time of the death of his said son, and if there be
none so alive, to Harvard College, Cambridge, Massa-
chusetts, — one half of the income thereof to be used by

said college for the assistance of students of said college to complete their regular course therein, and the other half of the income thereof for the general uses of the college, apart, however, from any participation therein by the divinity school.

" 7. I give to my hereinafter-named executor, Jerome Lincoln, of said San Francisco, all the rest of my property, real, personal, or mixed, except what I may have in France, of every kind and nature, and not hereinbefore disposed of, after the payment of my debts, in trust, nevertheless, to pay over to my said wife, Louise Palmyre Vion Whitcomb, one third part of the interest thereof, or income therefrom, for and during her natural life, and the other two-thirds parts to my two children, born of her, — one, Adolphe, born on or about the twenty-third day of February, 1880, and the other, Charlotte Andree, born on or about the fourth day of December, 1882, — with the reversion or remainder of the whole three-thirds parts to the descendants *per stirpes* of the said two children, if any be alive at the time of the death of the said two children; and if none be alive at that time, to Harvard College, in conformity with the provisions named or indicated in section six (6) of this will, having reference to said Harvard College. The said Lincoln is hereby authorized to pay out of said two-thirds parts only such portion as he may deem meet, fit, and proper for the education and maintenance of said two children until they shall have arrived, respectively, at the age of twenty-one years, after which they will be entitled to receive their portion of the yearly income or interest. And the said Lincoln is hereby authorized to appoint his successor or successors in this trust."

It is said in *Colton* v. *Colton*, 127 U. S. 309, a case on appeal from the United States circuit court for California, as the rule on the subject laid down by Chief Justice Marshall: " The first and great rule in the exposition of wills, to which all other rules must bend, is, that the

intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law." Mr. Whitcomb was a lawyer, and understood fully what was necessary in order to vest a trust estate. If he had intended that the property thus willed to Adolphus Tuttle and his son should finally go to Harvard College, as is contended for by the appellant, it was very easy for the former to have said so in unequivocal language. As to the other property mentioned in the seventh clause of his will, he expressly left it, in trust, to Jerome Lincoln to pay over to his, testator's, wife one third of the income thereof during her natural life, and the other two thirds to his two children, born of her, with the reversion or remainder of the whole to their descendants *per stirpes*, if any were alive at the death of the children; and if no descendants of them were alive at their death, the property to go to Harvard College, in conformity with the provisions named or indicated in section 6 of the will, having reference to that college. If he had intended to create a trust in the sixth section, he would have said so in as plain language as he used in the seventh section.

Again, when, in the fourth section, he leaves his wife two hundred thousand dollars of his Chesapeake and Ohio railroad bonds, he further recommends that she do not dispose of them or convert them without the distinct advice of his friend Mr. Bruce. There it is plain that the solicitude of the husband for the wife's welfare induces him to say to her, in effect: "It is my advice that you consult Mr. Bruce and be governed by his judgment in your action as to the sale or conversion of these bonds." Even to the wife, to whom, from her close alliance to him, such a word as "recommend" might be intended to have more binding force than to a man like Mr. Tuttle, he does not use that word in a sense to convey any particular injunction or command, disobedience to which would affect her title to the property in any way, or by means of which Mr. Bruce acquired any in-

terest in the property. And in the third section, where he recognizes the business capacity of and his confidence in A. D. Tuttle and Henry Foster Whitcomb, by making them trustees for two persons, he uses apt and unambiguous language. In fact, the whole will, taken together, shows that the testator fully understood what he desired done with his property, and that when he intended trusts to exist he said so in plain language. And when he gave persons property, and recommended them to do so and so with it, he meant to leave them free to act upon his advice or not, as they saw fit, but did not intend in any way to limit the estates he had bequeathed them in the first part of the sections of the will, giving the property.

Such being the plain intent of the testator, it is clear that the trial court gave proper construction to the section of the will in controversy, and we advise that the judgment appealed from be affirmed.

BELCHER, C. C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.