[Civ. No. 21714. Second Dist., Div. Two. Nov. 16, 1956.]

Estate of OSCAR FREEMAN, Deceased. FREDERICK WARRINER et al., Appellants, v. SECURITY-FIRST NATIONAL BANK as Trustee, etc., et al., Respondents.

Cecil Whitehead, Robert McWilliams and Russell K. Lambeau for Appellants.

Rinehart, Merriam, Parker & Berg, Ralph T. Merriam, Jay D. Rinehart, Newby, Holder & Newby, Anderson & Howard, Boyle, Bissell & Atwill, Charles R. Newby, Henry H. Hege and John R. Atwill, Jr., for Respondents.

MOORE, P. J.—Security-First National Bank, trustee of certain testamentary trusts created by the will of Oscar Freeman, seeks instructions with reference to distributing the balance of one trust which has now terminated. The instrument to be construed is the decree of distribution entered March 28, 1933. The claimants are on the one hand certain relatives of the decedent and the Pasadena Home for the Aged, on the other 14 miscellaneous charities.

The following is a summarization of the pertinent portions of the decree:

"(4) All the rest, residue and remainder of the property of the said deceased, whether real, personal or mixed, wherever situate, to the Security-First National Bank of Los Angeles, a National Banking Association, in trust, however for the following uses and purposes: . . .

"(b) One-half to pay to Lois F. Baldwin, the net income therefrom as long as she lives . . .

"(e) Upon the death of said Lois F. Baldwin, there shall be set apart a separate trust fund in the sum of Fifty Thousand Dollars ($50,000.), to pay the net income therefrom to Alice Webb and Helen Hannam equally as long as they live, or if one should die, then to pay the whole of said net income to the other as long as the survivor lives.

"(f) After the death of said . . . Lois F. Baldwin and after the setting apart of the . . . trust funds of Fifty Thousand Dollars . . . hereinbefore referred to, [as well as certain other trust funds provided for before this point in the decree] then out of the funds remaining in the hands of the Trustee, *if there shall be sufficient thereof,* there shall be established the following trusts, the amounts of which should the funds remaining in the hands of the trustee prove insufficient to completely establish all, shall be ratably reduced, proration to be among the said trusts as entities:" [Thereupon followed three numbered trusts created, *inter alia,* in favor of Edith Maud Hannam, Lois Patricia Hannam, John Hannam, Frank Baldwin Hannam, Bruce Walden Webb, Edna Earl Webb, Charles J. Webb, Jr., and Arthur Moulton Webb. All are appellants in this action. If any of the last named persons should have died before attaining 30 years, the opposing claimant charities, respondents herein, would have taken such gift under these trusts.]

"(g) When all of the foregoing trusts have been established, then out of the funds remaining in the hands of said trustee, there shall be paid in cash to: [certain designated persons including Oscar Freeman Hannam, appellant herein.]

"(h) Out of the funds remaining in the hands of the Trustee, there shall be paid in cash to the Pasadena Home for the Aged of Pasadena, California, the sum of Fifty Thousand Dollars . . . as a memorial to Mary Helen Freeman, mother of the decedent, which, *if there be sufficient funds remaining in the hands of the Trustee, shall be paid in full before any of the specfiic bequests enumerated in Paragraph (i) are paid.*"

"(i) [This paragraph awarded general bequests to the Salvation Army of Pasadena, Scottish Rite Temple Association of Pasadena, Pasadena Free Dispensary and eleven other charities, respondents on this appeal.]

"(j) All the balance of said estate which may remain in the hands of said trustee, *either by reason of the termination of the trusts, hereinbefore referred to, or by . . . lapsation* . . . then said *balance* shall be divided among . . . [the 14

respondent charities] . . . in the proportion that the bequest to each institution bears to the total bequests."

Between the date of the execution of the will and the decree of distribution, the business depression of the 1930's occurred. A shrinkage of the estate resulted in a depletion of funds to such extent as to make it impossible to pay all the bequests. This was true specifically upon the death of Lois F. Baldwin, the first life tenant of one-half of the estate. Also, it was true upon the death of the life tenant of the other half. Notwithstanding the fact that there were enough funds at that time to establish the $50,000 life trust in favor of Alice Webb and Helen Hannam (paragraph e), the bequests to appealing relatives and to the Pasadena Home for the Aged remained unfulfilled. Now that some 22 years have elapsed since the decree of distribution, and Alice and Helen have passed on, the corpus of their $50,000 trust must be distributed. The trial court determined that the decree of distribution should be so interpreted as to allow the 14 respondent charities to take under paragraph (j) of the decree the funds from the terminated trust to the exclusion of the relatives and the Pasadena Home for the Aged. The court excluded appellants' offer of the will of the testator and other evidence offered to prove that the true intention of the deceased was contrary to the trial court's interpretation.

First, *considering the decree of distribution by its four corners, did the trial court properly award the corpus of the terminated trust to respondent charities?*

The several paragraphs of the decree (f, g, and h) provide substantially that the bequeathed sums are to be distributed only in the event that there be *"sufficient funds" remaining in the hands of the trustee at the death of Lois F. Baldwin.* Now, respondents contend that these words condition the gifts to appellants. In other words, they argue (1) that such gifts were contingent upon the existence of sufficient funds in the estate at the time of the death of Lois F. Baldwin, the original life tenant, to discharge the legacies, and (2) that the contingency failed. However, there is no reason whatsoever to construe the gifts to appellants as contingent upon the presence of funds. ▉ A gift is contingent when founded upon an event of such a nature that it is presumed that the testator meant to make no gift unless that event happened. (*Estate of Blake,* 157 Cal. 448, 459-460 [108 P. 287].) ▉ A reading of the decree indicates that "if there be sufficient funds" merely serves to indicate the order of abatement of the be-

quests. That is what occurred here: appellants' gifts were abated because there were not enough assets in Freeman's estate to meet the prior gifts provided by the decree and yet leave "sufficient funds" for appellants. Nothing indicates an intention on the part of the court to condition these gifts by its decree rather than abate them.

■ It is generally recognized to be the law that upon the termination of a testamentary trust the corpus does not fall into the residuum of the estate of the settlor *until* all general bequests have been fully paid. (*Sibley* v. *Livermore,* 332 Mass. 730 [128 N.E.2d 329, 332]; *In re Markey's Will,* 125 N.Y.S.2d 246; note, 118 A.L.R. 352.) This rule, though usually applied to the construction of wills, has been applied in California to the interpretation of decrees of distribution. (*Estate of Loring,* 29 Cal.2d 423, 438 [175 P.2d 524], citing the A.L.R. note, *supra.*) That such practice comports with sound reasoning readily appears. ■ When a court decrees the distribution of the estate of a testate decedent, its aim and function are to effectuate the intention of the testator in disposing of his property. It is only logical that a rule that is efficacious in determining such intention of the testator as reflected in his testamentary disposals will be also of assistance in deriving the intent of the court as expressed subsequently in the order distributing his estate.

In labelling the contestants here for application of the above principle, it is clear that appellants are unsatisfied general legatees. ■ But the question is: are respondents only residuary beneficiaries? Disregarding certain language to be discussed immediately below, paragraph (j) of the decree is in general a residuary clause. It is extremely unlikely that a decree of distribution would fail to create a residuum without mentioning the possible intestacy which would result.

■ The construction of a will or decree which would lead to intestacy is not favored. (Prob. Code, § 102; *Buttram* v. *Finley,* 37 Cal.App.2d 459, 467 [99 P.2d 1093].) A glance at paragraph (j) clinches the point. It provides that "all the balance of said estate which may remain" should be distributed to the 14 respondent charities. According to the foregoing rule, the trial court erred in directing distribution of the trust corpus to respondents before the general legacies have been paid *unless* some provision of the decree can be found to justify the conclusion that respondents were more than mere residuary beneficiaries.

Paragraph (j) provides that "All the *balance* of said estate

which may remain in the hands of said trustee, *either by reason of the termination of the trusts, hereinbefore referred to, or by . . . lapsation . . .''* shall be distributed to respondent charities. It is this language which respondents assert to be clear and unambiguous in passing over appellants' gifts to respondents upon termination of the trusts. This argument is, in effect, that the language purports to create a *remainder* in the charities after termination of the life estates in trust. Such contention persists despite the fact that when the court directed remainders after the exhaustion or lapse of other trusts created in the decree, the remainder was included in the paragraph which created the trust. (See paragraph f.) In order fairly to appraise the phraseology of the decree and to ascertain the court's purpose, it is deemed helpful to scan the language of other wills or decrees which courts have adjudged insufficient to create a remainder in the residuary beneficiary and overcome the effect of the rule that general legacies must first be satisfied:

''[I]f it fails within said time to secure such site, then the bequest to it shall absolutely lapse and shall thereupon pass under the residuary clause of decedent's will.'' (*Estate of Loring, supra*, 29 Cal.2d 423, 438.) ''At her death, the said trust fund shall be divided in accordance with the residuary clause of this will.'' (*Sibley* v. *Livermore, supra*, 332 Mass. 730 [128 N.E.2d 329, 330].) Trust principal to ''go as part of the residuum under the 26th clause of this will.'' (*Louisville Presbyterian Theological Seminary* v. *Fidelity Trust & S. V. Co.*, 113 Ky. 336 [68 S.W. 427].) In *Smith* v. *Livermore*, 298 Mass. 223 [10 N.E.2d 117, 126], it was held that language similar to the foregoing when coupled with a provision in the residuary clause that it was to include all ''reversions and remainders'' buttressed the conclusion that general legacies should first be paid.

On the other hand, *In re Reynolds' Will*, 242 N.Y. 389 [152 N.E. 124], decided that when the *clause in the will which created the trust* provided that the corpus upon its termination should go to ''the institutions hereinafter named in clause twelfth,'' referring to the residuary clause, those institutions were intended to take as remaindermen rather than as residuary beneficiaries.

In view of the above authorities, the trial court erred in so construing the decree as to create a remainder in respondents after termination of the $50,000 trust. The only language of the decree indicating that the charities should

take as remaindermen is found not in the clause creating the trusts but in the residuary provision. By the original decree, the court provided in paragraph (j) that respondents were to take the "balance" of the estate. Had nothing further been said, the "balance" would include the principal of terminated testamentary trusts, subject of course to satisfaction of general bequests. Neither was anything added nor was any change effected by the express provision that the "balance" was to include sums accruing "by reason of the termination of the trusts." The language of the instant decree is singularly similar to that in *Smith* v. *Livermore, supra,* 298 Mass. 223 [10 N.E.2d 117]. There the residual clause expressly included "reversions and remainders"; the instant decree places in the residuum funds left after the "termination of trusts." The Massachusetts court held that the residuary beneficiaries are not entitled to any reversions or remainders while general legatees are still unsatisfied.

The above conclusion is supported by a consideration of the entire decree. The scheme there set up provides that certain immediate relations are to take first from the estate, then more distant kin (appellants), then a gift to the Pasadena Home for the Aged in memoriam of the deceased's mother, and finally the "balance" to the assorted charities. A glance at the list of charities indicates that they could not have been the prime object of the court's concern in effectuating the intent of the testator. They include many divers, though worthy, institutions whose activities have no particular interrelationship whatsoever. The conclusion is inescapable that the court intended these charities to be the residuary safety valve for any surplusage in the testator's estate, but immediately to take only those moderate sums bequeathed them in paragraph (i) of the decree. It would do violence to the obvious scheme of distribution created by the court in compliance with the testator's intent to benefit these charities to the exclusion of the kin and the memorial for decedent's mother. (*Estate of Olson,* 144 Cal.App.2d 694, 695-696 [301 P.2d 501].)

Second, *should the trial court have allowed into evidence the will of the testator upon which the original decree was based?*

A decree of distribution that has become final is a conclusive determination of the terms and validity of a will, trusts created therein, and the rights of all parties thereunder. (*Pacific Mutual Life Ins. Co.* v. *McConnell,* 44 Cal.2d

715, 726 [285 P.2d 636]; *Federal Farm Mortg. Corp.* v. *Sandberg*, 35 Cal.2d 1, 4 [215 P.2d 721]; *Estate of Loring, supra*, 29 Cal.2d 423, 427.) It cannot be attacked now on the claim that it did not properly construe the will upon which it was based. (*Estate of Loring, supra*, p. 432.) Thus, the proffered evidence was properly excluded unless the decree was *ambiguous*, in which event the will should be admitted merely to clarify the decree. (*Estate of Goldberg*, 10 Cal.2d 709, 713 [76 P.2d 508]; *Buttram* v. *Finley, supra*, 37 Cal. App.2d 459, 465.)

The question, then, is whether this decree is ambiguous in any material particular. Our discussion above indicates that if this decree is certain and unambiguous, its clarity militates against rather than in favor of respondents. However, for the sake of argument, several ambiguities may be suggested: (1) It could be argued that paragraph (j) does not clearly indicate whether respondents are to take the "balance" of the estate including funds from the "termination of the trusts" as residuary beneficiaries or as remaindermen. (2) Does the provision that respondents are to take funds from terminated trusts refer only to those trusts created in paragraph (f) of the decree in which the assorted charities were expressly named as remaindermen or alternative beneficiaries? (3) Could the court have intended in 1933 that should any of the trusts have been immediately void or lapsed the language of paragraph (j) would serve to entitle the charities to the sums to the exclusion of the kin and the Pasadena Home for the Aged, each of which ranked higher in the scheme of the decree? If any of these purported ambiguities are of consequence, the will may be introduced to explain the decree.

 A casual glimpse at the provisions of the will confirms our interpretation of the decree. (1) The will mentions nothing in the clause paralleling paragraph (j) relative to the funds to be derived from termination of the testamentary trusts. (2) The bequest to the Pasadena Home for the Aged, which preceded the gifts to respondents, expressly provided that it was to be "paid in full before *any* of the gifts which follow." (Emphasis added.) A reading of the entire will indicates even more lucidly than the decree a testamentary scheme in which the respondent charities were residuals; commendable institutions to be aided only after the testator had fully provided for his kin and created a memorial to his mother.

The proper construction of a written instrument when no extrinsic evidence is in dispute is a mere question of law. (*Estate of Norris,* 78 Cal.App.2d 152, 159 [177 P.2d 299].) Therefore, the interpretation of the 1933 decree is accomplished here without further reference to the trial court.

The orders contained in paragraphs II and III of the decree are reversed. The trustee is hereby instructed to use the assets of the trust estate herein accounted for after deduction of taxes, including the sum of $200 reserved by the trustee for Federal and California income taxes, to set up the remainder of the Frederick P. Warriner trust provided for under subdivision (d) of the decree of distribution; and to use the balance of the funds to set up the trusts and pay out the cash legacies provided for under the provisions of subdivisions (f) (1), (f) (2), and (f) (3), (g), (h) and (i). All such distributions are to be in accordance with the order of preference provided in the 1933 decree. If any funds should remain in the hands of the trustee after compliance with the foregoing instructions, the balance is to be distributed to the charities listed in subdivision (i) of the decree in accordance with the ratio established in paragraph III of the order and decree herein on appeal.

Fox, J., concurred.

Ashburn, J., did not participate herein.

A petition for a rehearing was denied December 13, 1956. Ashburn, J., did not participate therein. Respondents' petition for a hearing by the Supreme Court was denied January 8, 1957.