Rhode Island Hospital Trust Company, *Trustee vs.*

William O. Arnold *et al.*

JULY 2, 1957.

Present: Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J.   This is a bill in equity for construction and instruction brought by the trustee of three *inter vivos* deeds of trust.   The pertinent facts were stipulated and the case was certified to this court for our determination under general laws 1938, chapter 545, §7.

The deeds of trust were executed in 1907 and 1908, two by Ruth S. Arnold alone, and one by Ruth and her stepson William H. Arnold.   The deeds provide for successive life estates in the income for three generations of the Arnolds beginning with the settlors.   The distribution of the corpus

was put off until after the death of the last life tenant, which event has now occurred.

The language of each of the deeds is identical with respect to the termination of the trust and the distribution of the corpus, and it is with such distribution that we are now concerned. The following language appears in one of the deeds: "If, however, either or both the said Amey or Frances shall be living at the time of the decease of the said Harriet S. Arnold, then said trust shall continue until the death of the survivor, and upon the death of said survivor said trust property and estate shall be conveyed one-half (½) to the heirs at law of the said Amey Arnold, in accordance with the statutes then in force in the State of New York, in the case of persons dying intestate, and one-half (½) to the heirs at law of the said Frances Arnold, in accordance with the statutes then in force in the State of New York in the case of persons dying intestate."

In 1907 Ruth was eighty-three years old and she lived until the age of one hundred and three. Amey and Frances were stepgrandchildren of Ruth and in 1907 they were about thirty years old and unmarried. Amey, without ever having been married, died September 16, 1944, at which time her heirs-at-law were her sister Frances and their brother William B. Arnold. Frances was married, but died February 20, 1956 without issue, and her sole heir was William O. Arnold, a son of William B. Arnold. It is admitted that the half of the corpus of the three trusts going to the heirs-at-law of Frances will pass to him. The brother, William B. Arnold, died testate after Amey's death and before the death of their sister Frances, thus leaving as Amey's sole heir at the time of the latter's death their nephew William O. Arnold, the son of William B. Arnold.

The trustee and the estate of William B. Arnold, brother of Amey and Frances, claim that Amey's heirs should be determined as of the date of her death thus making said estate entitled to one half of Amey's half, while William O.

Arnold, her nephew, claims that Amey's heirs should be determined as of the date of the death of his aunt Frances thus making him the sole heir of Amey as well as of Frances. This is the construction question.

The instruction question is: "Should the expenses of this proceeding be charged against the general assets of the respective trust estates or solely against the one half thereof to be distributed to the 'heirs at law' of the said Amey Arnold?"

The trustee, the estate of William B. Arnold, and William O. Arnold, the nephew, have filed rather exhaustive briefs and we have made a somewhat extended search of the authorities, although we have concluded that our cases together with the language of the deeds of trust are sufficient for the determination of this case. We shall discuss the arguments of the trustee and the estate collectively, although one may have put more emphasis on a particular argument than has the other.

It has long been recognized in this jurisdiction, as well as generally elsewhere, that the problem of construction is to determine the intention of the testator or, as here, of the settlors. *Starrett* v. *Botsford,* 64 R. I. 1, 6; *Industrial Trust Co.* v. *Budlong,* 70 R. I. 432, 441. It is equally well settled in this state as well as elsewhere, 57 Am. Jur., Wills, §1279, p. 846, that the phrase "heirs-at-law" or words of like import are to be construed as describing the heirs-at-law of the ancestor at the time of his death, unless, yielding to the dominant rule of intention just stated, it *clearly* appears from the language of the instrument that a later time was intended.

In *Starrett* v. *Botsford, supra,* this court, quoting from *Kenyon, Petitioner,* 17 R. I. 149, stated at page 6: " '* * * when the testator uses familiar legal words, he must be presumed to have used them in their ordinary meaning, until the contrary *clearly* appears.' " The court further stated: "Nowhere in his will does the testator indicate that he used

the words 'heirs' in any peculiar sense different from the generally accepted sense of that term. Under such circumstances, we are not at liberty to assume that he must have used the word in a different and special sense merely because by such an assumption we would arrive at what may seem to be a more practical result than is reached if we permit the testamentary language to speak for itself. * * * An heir is one on whom the local law of descent casts the inheritance on the ancestor's death; and, where a testator uses that word in his will, it is presumed, in the absence of a *clearly* indicated contrary intent in the will, that he used it in that sense. *Goodgeon* v. *Stuart*, 50 R. I. 6. And it has also been said by this court that: 'Under the well established rules of construction the word "heirs" is held to refer to the living person or persons holding that relation at the time of the testator's death in the absence of an intention to the contrary *clearly* evidenced in the will itself.' "

The cases decided by this court prior to the *Starrett* case were reviewed in the majority and dissenting opinions in that case, and it appears from them that in some cases the language of the will was found sufficient to compel the construction that the testator intended that his heirs or the heirs of some other person or persons mentioned in the will should be determined at a date subsequent to the death of the ancestor. The difference in opinion between the members of the court in that case was as to the actual application of the rule rather than as to the rule itself and that position was made clear in the majority opinion where the court stated at page 12: "Both lines of cases may stand, as they illustrate not a divergence on the law, which should govern the construction of language in a will such as in the instant will, but rather merely different applications of accepted rules to variations in the mode of particular testamentary expressions. On the one side the testamentary language afforded the court grounds for finding a *clear* intent of the testator to use the word 'heirs' in a special sense

rather than in its ordinary legal sense, and on the other side furnished the court no such grounds."

In the case at bar the parties recognize the same rule but they differ in its application to the facts of this case. However, we are satisfied that the plain meaning of the language used in the trust deeds calls for the construction argued for by the nephew, William *O*. Arnold. The first "then" in the above-quoted excerpt is clearly used as "in the event" but that word in the two phrases "in accordance with the statutes *then* in force in the State of New York, in the case of persons dying intestate" is clearly used as an adverb of time. (italics ours) In 57 Am. Jur., Wills, §1283, it is stated at page 850: "Where the word 'then' is used only to denote an event, as, for example, in the phrase 'if the life tenant should die without leaving issue surviving him, then it is my will that the property go to my heirs,' it is not conclusive of an intention that ascertainment of a class described as the testator's heirs or next of kin be postponed until after the testator's death, but where the word is clearly used as an adverb of time, and not as merely referring to an event, it will have the effect of postponing the ascertainment of the class until the period to which it has reference." See also 3 Restatement, Property, §308, Comment m, p. 1718.

These two "thens" refer to the anterior phrase "upon the death of said survivor." This construction is in accordance with what we understand to be the rules of English grammar, and in our opinion the language used is a proper way to provide that the heirs of each of the step granddaughters are to be determined upon the death of the survivor in accordance with the New York statutes of intestacy in force at the death of the survivor. Those taking the contrary view claim that the deeds were drawn by a lawyer, of which there is no direct evidence, who would use the phrase "heirs-at-law" in the technical sense. If so drawn, when the draftsman added "then in force" he must have known that he was

using "heirs-at-law" in the special sense. In *Starrett* v. *Botsford*, 64 R. I. 1, which clearly rules this case, the court at page 6 used the following quotation from *Harris* v. *Mc-Laran*, 30 Miss. 533, which it had previously quoted with approval in *Kenyon, Petitioner*, 17 R. I. 149, 163. " 'The terms "lawful heirs," "right heirs," and "heirs" are synonymous; their significance is fixed by law; and when they are used in a deed or will *without any superadded words or phrases, indicating a different meaning,* they are always understood to be used according to their legal acceptation.' " (italics ours) Here we have the "superadded words or phrases" indicating that the term "heirs-at-law" was used in these trusts in the special sense.

It is true that the law favors early vesting, and the trustee and the estate argue vigorously that because that is so we should determine that the heirs of Amey at her death had vested remainders in her half. This they do, however, in the teeth of the words of the trusts which plainly show that her heirs could not be determined until the death of her sister because only at that time could the then law of New York be known. Her heirs at death might well not be her heirs at the death of Frances, since the New York law might then exclude them or some of them.

In *Aldrich* v. *Aldrich*, 43 R. I. 179, this court stated at page 184: "In the case of a vested remainder there is a person in being ascertained and ready to take, who has a present right of future enjoyment, which is not dependent upon any uncertain event or contingency, while in the case of a contingent remainder the right itself is uncertain." Furthermore, it is clear that the law favoring vesting is subordinate to the *written expression* of the testator. In *Taber* v. *Talcott*, 40 R. I. 338, this court stated at page 342: "While it is true, as stated by Tillinghast, J., in *Ross* v. *Nettleton*, 24 R. I., p. 127, 'that the law favors the vesting of estates immediately upon the death of the testator, and will not regard the remainder as being contingent, in the absence

of a clear intent on the part of the testator to that effect,' nevertheless it has been uniformly held that this preference of the law is subordinate to the fundamental principle of construction that 'the *written expression* of the testator taken in its natural sense and use, and applied to existing facts must control.' "

It also appears from the analysis of the cases made by the annotators and text writers that whether the limitation over is a vested or a contingent remainder or an executory devise does not control the question of when the heirs are to be determined. 57 Am. Jur., Wills, §§1287, 1288, pp. 852, 853.

These parties also argue with plausibility that Ruth would not want any of her step greatgrandchildren to lose part of its parent's share of Amey's share because its parent although living at Amey's death did not live until Frances' death. As stated in the middle paragraph of our quotation from *Starrett* v. *Botsford, supra,* the mere desirability of a construction does not overcome the general rule, *i.e.,* that "heirs-at-law" mean "heirs-at-law" at the time of the death of the ancestor. By a parity of reasoning the mere desirability of the construction urged by the trustee and the estate does not overcome the plain language of the trust from which, as we read that language, it clearly appears that the determination of the heirs-at-law of Amey was deferred until her surviving sister's death. Furthermore, the situation suggested has not arisen and it certainly cannot be said that the settlor Ruth would rather have the estate of her step grandson, William *B.* Arnold, have half of Amey's share than have that share go to his son William *O.* Arnold, Ruth's step greatgrandchild. Under their construction the half in question, after the trust companies in their various capacities and possible creditors have reduced it by their fees, expenses and claims, would be disposed of in accordance with the will of William *B.* Arnold. Under our construction, it goes directly to William *O.* Arnold.

These parties further argue that the language "to the heirs at law of the said Amey Arnold, in accordance with the statutes then in force in the State of New York, in the case of persons dying intestate" means the heirs-at-law of Amey at her death and that the same phrase in which Frances' name is substituted for Amey's name means heirs-at-law at the death of Frances. They state it is significant that the settlors repeated the direction for each separately. The trustee says: "Had the 'then' been clearly intended to apply to the death of the survivor, it would have been easy—indeed easier—to have made a single reference to the statute of descent in force at the death of the survivor. As it is, the only sense made by deliberately using the double reference after each girl's name is if the word 'then' in each case refers to the normal time for determining the 'heirs' of each girl, i. e.—at the death of each."

We are not impressed by this contention. In fact the double reference could well have been used to make the settlors' intention doubly clear that the heirs-at-law of each step granddaughter should be determined at the death of the survivor of them.

The trustee and the estate also argue that at least since the *Starrett* case, *supra,* what is known as the "divide and pay over" provision is slight, if any, evidence of the settlors' intention to postpone the determination of the class until the date of division. Assuming without deciding that the cases support this position, we have here a "divide and pay over" provision, and while it alone would not overcome the presumption that heirs-at-law mean those determined as of the date of the death of the ancestor, it is consistent with and at least tends to support our construction.

These same parties point out that the fact that one of the step granddaughters could be an heir-at-law of the other does not compel the construction that we have adopted. Here again it is consistent with and certainly does not overcome the express language that we rely upon.

While the rule of presumptive intent is strong it is not a rule of law. It is only a rule for determining intention, and when the testator or settlor's intention is *expressed* the presumptive rule is unnecessary and is displaced. Where a testator or a settlor says "my heirs-at-law *at the time of my decease*" there is no reason to resort to the presumptive rule since the real intent is expressed. Likewise, when the testator or settlor says in effect "my heirs-at-law *at the death of X*" there is an expressed intention and there is no need for construction. It is stated in 54 Am. Jur., Trusts, §17, at page 35: "If the language is unambiguous and perfectly clear, there is no field for the play of construction; if the trustor has clearly expressed one intention, the court cannot impute to him another * * *."

No one has referred to any provision in the deeds of trust other than the one previously quoted, and as we are of the opinion that the language of that provision shows clearly that the heirs-at-law of Amey are to be determined as of the death of her surviving sister, we advise the trustee to act accordingly.

We now turn to the instruction question. In view of our answer to the construction question it is unnecessary to answer the instruction question, because William O. Arnold will receive all the corpus of all the trusts and consequently there is no question of apportionment.

On July 8, 1957 the parties may present to this court for approval a form of decree in accordance with this opinion to be entered in the superior court.

*Tillinghast, Collins & Tanner, Edwin H. Hastings,* for complainant.

*Horace L. Weller, Melvin L. Zurier,* of Massachusetts Bar, for respondent William O. Arnold.

*Hinckley, Allen, Salisbury & Parsons,* for respondents Sydney G. Soons and Irving Trust Company, and for respondent Rhode Island Hospital Trust Company.