[Civ. No. 20643. First Dist., Div. One. Mar. 28, 1963.]

Estate of J. U. MINER, Deceased. DONALD MINER, Objector and Appellant, v. JOHN E. MINER et al.. Beneficiaries and Respondents.

Douglas, Zingheim & Allen and John C. Vernon, Jr., for Objector and Appellant.

Miller, Morton, Wright & Caillat and Howard M. Evans for Beneficiaries and Respondents.

SULLIVAN, J.—This is an appeal on a partial clerk's transcript and agreed statement of facts from an order of the probate court terminating a testamentary trust and distributing the balance of the corpus and accumulated cash income thereof. Simply stated, the question for our decision is whether the court below properly determined the persons to whom and the proportions in which such remaining trust assets should be distributed. We have concluded that it did.

J. U. Miner died on September 11, 1937. By his will, executed November 21, 1932, which was admitted to probate, the testator, after providing for several specific bequests not material here, devised and bequeathed the residue of his estate as follows: one-third thereof to his son Elliott S. Miner; one-third to his grandson Donald Miner, appellant herein, the only child of the testator's predeceased son Kenneth Miner; and one-third to the Bank of America National Trust and Savings Association in trust for his son Louis C. Miner. Generally speaking, the testator directed his above trustee to pay the net income of the trust to his son Louis during the

latter's lifetime, invested the trustee with power to invade the corpus under certain conditions and included in the trust a spendthrift provision. The trust also contained the following provision dealing with its termination and crucial to the instant controversy: "Upon the death of my said son Louis C. Miner—whether with or without lawful issue—said trust corpus or whatever remains thereof, together with any income then in the hands of said Trustee, shall be paid and delivered to my heirs in accordance with the laws of succession of the State of California, then in force, and thereupon this trust shall forever cease and terminate."

At the time of the settlement of the first account of the executor Elliott Miner, the court ordered partial distribution of the assets of the estate to a number of beneficiaries named in the will, including the aforementioned corporate trustee. The decree of settlement of first account and of partial distribution, filed May 10, 1938, ordered, *inter alia,* that certain specified property comprising a portion of the residue be distributed to said trustee in trust for the testator's son Louis C. Miner "for the uses and purposes set forth in said Will and in the following paragraphs . . . ," the decree thereafter setting forth in substantially the same language all of the trust provisions of the will. The provision dealing with the termination of the trust appears in the decree as follows: "That upon the death of said Louis C. Miner, whether with or without lawful issue, said trust corpus or whatever remains thereof, together with any income then in the possession or under the control of said Trustee shall be paid and delivered to the heirs of said decedent, J. U. Miner, in accordance with the laws of succession of the State of California, then in force, and said trust thall thereupon forever cease and terminate." The decree of settlement of third and final account and of final distribution, filed February 19, 1943, ordered distribution to the corporate trustee of one-third of the residue and of any after discovered property, repeating in identical language all of the trust provisions set forth in the decree of partial distribution, including the above provision relating to the termination of the trust.

At the time of the death of J. U. Miner on September 11, 1937, his only heirs were his sons Louis C. Miner and Elliott S. Miner and his grandson Donald Miner, appellant herein. Louis C. Miner, the life income beneficiary of the trust, died on September 25, 1961, leaving neither spouse nor issue. Elliott S. Miner died on August 25, 1953, and thus after the

death of the testator and before the death of the income beneficiary. Elliott left surviving him two sons and a daughter, John E. Miner, Neil W. Miner, and Lillian Miner Reinhardt, all of whom also survived Louis C. Miner and are the respondents herein.[1]

After the death of Louis C. Miner the trustee filed its twenty-second and final account and its petition for the settlement thereof and for an order of the probate court terminating the trust. In its petition the trustee took the position that under the provisions of section 222 of the Probate Code, Donald Miner, appellant herein, and the three children of Elliott S. Miner, respondents herein, were entitled to succeed to the trust estate in equal shares. Appellant filed objections to such petition and in addition a separate petition for an order to determine interest in the trust estate, in which he claimed a one-half interest in the distributable assets thereof. After a hearing, the court below made its order terminating the trust and distributing its remaining assets in accordance with the petition of the trustee. This appeal followed.

According to the agreed statement of the parties, appellant contends that "the testator intended his heirs to be ascertained from among his descendants living at the time of the testator's death" and that under section 222 of the Probate Code he takes by right of representation through his father Kenneth Miner. On this theory, Louis Miner being dead, appellant claims that he is entitled to one-half of the trust estate and that the three respondents are entitled to the other half, taking by right of representation through their father Elliott C. Miner. The respondents, on the other hand, contend that "the testator intended his heirs to be ascertained from among his descendents living at the time of Louis C. Miner's death, rather than at the time of the testator's own death," and that since all four descendants are in the same degree of kindred, section 222 requires the trust estate to be distributed to them in equal shares.[2] On this theory, appel-

---

[1]The trustee Bank of America National Trust and Savings Association is also a respondent. However all of the parties, including the trustee, have filed a written stipulation herein that such trustee need not file a brief herein "the appeal not in anywise effecting [*sic*] it as such trustee or otherwise." Our reference hereafter to respondents will therefore not include the trustee.

[2]Probate Code section 222 provides: "If the decedent leaves no surviving spouse, but leaves issue, the whole estate goes to such issue; and if all of the descendants are in the same degree of kindred to the decedent they share equally, otherwise they take by right of representation."

lant would receive only one-fourth instead of his claimed one-half of the remaining assets. In essence, therefore, the question presented to us is whether the "heirs of said decedent, J. U. Miner," who were to take upon termination of the trust are to be determined as of the time of the death of J. U. Miner (September 11, 1937) or as of the time of the death of the income beneficiary Louis C. Miner (September 25, 1961).

██ "It is settled . . . that a decree of distribution that has become final is a conclusive determination of the terms and validity of a testamentary trust and of the rights of all parties thereunder." (*Estate of Loring* (1946) 29 Cal.2d 423, 427 [175 P.2d 524], and see cases collected at pages 427-428.) ██ The effect of a will is therefore controlled by a decree of distribution when final (*Estate of Easter* (1944) 24 Cal.2d 191, 194 [148 P.2d 601]) and to the extent of any inconsistency between the provisions in the will and those in the decree, the latter will control. (*Estate of Loring, supra*; *Estate of Easter, supra*; *Estate of Haney* (1959) 174 Cal. App.2d 1, 6 [344 P.2d 16].) ██ It is within the jurisdiction of the probate court upon proceedings for distribution to determine and declare in the decree the scope and terms of any trust created by the will and found valid, to make distribution to the trustee of the trust property and "to determine what other persons had legal or equitable rights to the distributable property of the estate, and the extent and nature of their interests. ██ Having jurisdiction to determine these matters on distribution, when the decree does so determine them, although the determination may be incorrect, it is conclusive as to the rights of heirs, legatees, and devisees unless corrected on appeal. It is not subject to collateral attack or to be impeached by resort to the terms of the will. The rights of the parties must thereafter be determined by resort to the decree of distribution alone as a final and conclusive adjudication of the testamentary disposition which the deceased made of his property." (*Luscomb* v. *Fintzelberg* (1912) 162 Cal. 433, 438-439 [123 P. 247].)

██ Should the decree be uncertain or ambiguous "the will itself may be used to establish the true meaning and intent of the decree" (*Estate of Goldberg* (1938) 10 Cal.2d 709, 713 [76 P.2d 508]; *Estate of Doyle* (1962) 202 Cal.App.2d 434, 444 [21 Cal.Rptr. 123]) and thus to interpret and clarify, but not to contradict, the decree (*Fraser* v. *Carman-Ryles* (1937) 8 Cal.2d 143, 146 [64 P.2d 397]; *Estate of Freeman*

(1956) 146 Cal.App.2d 49, 57 [303 P.2d 609]). ▮ In the absence of uncertainty and ambiguity in its language, it is unnecessary for us to go behind the decree in order to determine the intent of the testator.

However, it is immaterial in the instant case whether we consider the wording of the provision for the termination of the trust in the decree or the wording of the corresponding provision in the will. For all practical purposes, the language of both clauses is the same.[3] We are therefore not presented with a situation like that, for example in the *Estate of Easter, supra,* where constructional language appears in the decree but not in the will.[4] Here the construction of the decree and the interpretation of the corresponding language in the will pose the same question.

It is clear at the outset that the crucial provision here under examination which is found in both decrees of distribution and follows closely the language of the will, sets forth and establishes a class gift for heirs. (*Estate of Newman,* (1924) 68 Cal.App. 420 424 [229 P. 898]; 57 Am. Jur., Wills, § 1262, pp. 834-835.) ▮ The word "heirs" is admittedly a technical term (*Estate of Watts* (1918) 179 Cal. 20, 22 [175 P. 415]) and the heirs of a person are those whom the law appoints to succeed to his property at his death in case of intestacy. (*Estate of Watts, supra; Estate of Newman, supra; Estate of Baird* (1955) 135 Cal.App.2d 333, 337 [287 P.2d 365].) ▮ Where the word "heirs" is used as a word of donation, and not of limitation, it describes the recipients of an interest and "both the identity of the takers and the size of the interest taken depend upon some statute concerning intestate succession." (3 Powell on Real Property (1952) § 371, p. 192; Prob. Code, § 108.)

▮ When used to create a class gift, the word "heirs," therefore, possesses an inherent definitive quality. It nor-

---

[3] With minor changes in language having no effect on the meaning, each provision directs that the unused balance of the trust estate "shall be paid and delivered" to the heirs of J. U. Miner "in accordance with the laws of succession of the State of California, then in force. . . ."

[4] In the *Estate of Easter, supra,* the decree of distribution provided that upon the death of the life income beneficiary, the trust estate "shall go to and vest in" the heirs of the testator whereas the will provided that upon such event the trustee "shall convey, deliver and pay over" such estate to the heirs. In the dissenting opinion Mr. Justice Traynor took the position that the word "vest" in the decree did not necessarily import a vesting in right as distinguished from a vesting in possession and that reference must therefore be made to the will to ascertain the meaning of the decree. (24 Cal.2d 191, 196-197.)

mally refers to a class of persons designated as takers by a statute of succession. "In this respect, a class gift to 'heirs' and the like differs materially from other class gifts. When the takers are described as 'issue,' or 'children,' or 'nephew,' and the like, the potential takers are ascertained without reference to any statute. There we have the problems of increasing membership or decreasing membership, which have already been discussed. When the gift is to 'heirs' the application of the statute will normally fix the takers. The problem is merely to decide the time as of which the statute shall be applied." (Simes and Smith, The Law of Future Interests, (2d ed. 1956) § 728, p. 193; compare *Estate of Stanford* (1957) 49 Cal.2d 120 [315 P.2d 681]; Rest., Property, § 157(b).)

Where a gift is made to a class of "heirs," normally the members of such class who are to take the property are ascertained by applying the statute of succession as of the time of the death of the designated ancestor. (Simes and Smith, *op. cit.*, § 732, p. 200; 3 Powell on Real Property, § 375, p. 219; 4 Bowe-Parker: Page on Wills, § 35.9, pp. 514-517; Rest., Property § 308; *Estate of Newman, supra,* 68 Cal. App. 420, 424; *Estate of Liddle* (1958) 162 Cal.App.2d 7 [328 P.2d 35]; 49 A.L.R. 174; 127 A.L.R. 602; 38 A.L.R.2d 327; 65 A.L.R.2d 1408, 1413; 96 C.J.S., Wills, § 695(5), p. 46; 57 Am. Jur., Wills, § 1279, pp. 846-848.) Thus in the much cited and frequently quoted *Estate of Newman* it is stated: "It is a general rule of testamentary construction, so universally recognized as to render unnecessary a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder is given by will, is to be ascertained at the death of the testator." (*Estate of Newman, supra,* 68 Cal.App. 420, 424.) This rule of construction is not made inoperable by the fact that, absent clear words of direct devise, the trustee is merely directed to "distribute," "convey, deliver and pay" or "pay, transfer and deliver" the balance of the trust estate to the remaindermen on the death of the life income beneficiary. (Cf. *Estate of Wallace* (1938) 11 Cal.2d 338 [79 P.2d 1054]; *Estate of Newman* (1956) 146 Cal.App.2d 780 [304 P.2d 748].)

 The foregoing rule, however, is merely one of con-

struction and when the testator, or the decree of distribution conclusively adjudicating his testamentary disposition, manifests an intention that the statute of succession is to be applied as of a time earlier or later than the testator's death such intention must be given effect. (Simes and Smith, *op. cit.*, § 732, pp. 200-201, § 734, pp. 203-206; 3 Powell on Real Property, § 375, pp. 221-222; 4 Bowe-Parker: Page on Wills, § 35.9, pp. 517-519; Rest., Property, § 308, coms. g, m; 49 A.L.R. 174, 180; 127 A.L.R. 602, 605; 38 A.L.R.2d 327, 332; 65 A.L.R.2d 1408, 1419-1420.) Thus additional language or circumstances may establish a date later than the testator's death for the ascertainment of the members of the class of heirs intended as takers of the property. (Rest., Property, § 308, com. m.) It is worthy of note that where ascertainment of heirs is thus deferred the technical meaning of the term "heirs" is disregarded and in reality an artificial class of heirs is determined, namely those persons who would have been the testator's heirs if he had died at such later time. (See 26 Cal. L. Rev. 413, 423; 49 Cal. L. Rev. 297, 315.)[5]

 Where, in a provision creating a class gift to heirs, the word "then" is used as an adverb of time, and not merely to denote an event or the mere sequence of interests, such use will effectuate postponement of the ascertainment of the class of heirs until the time therein indicated. (Simes and Smith, *op. cit.*, § 734, p. 204; 3 Powell on Real Property, § 375, pp. 222-223; 57 Am.Jur., Wills, § 1283, pp. 850-851.)

 Section 308 of the Restatement of Property, comment m (pp. 1719-1720) states: "The fact that the gift to the described group is after the termination of a prior interest and is in terms to persons 'who are then the heirs' of the designated ancestor tends to establish that the statute on intestate succession is to be applied as of the end of the prior interest. The position of the word 'then' in the limitation justifies the inference that it was used by the conveyor designedly for the purpose of picking the time as of which the

---

[5]It should also be noted that if the statute of succession is applied as of the death of the testator and the class of heirs thus ascertained is required to survive to a later time, the possible remaindermen become a fixed group, not all of whom may be alive to take the property at such later date, thus presenting the possibility of an incomplete disposition of the property. Use of language deferring the ascertainment of heirs will thus reduce the likelihood that the gift will fail. (3 Powell on Real Property, § 375, p. 223; Rest. Property, § 308, com. m; 49 Cal.L.Rev. 297, 315; Simes and Smith, *op. cit.*, § 734, pp. 204-205.)

described group is to be ascertained. When, however, the gift is in terms 'then to the heirs' of a designated person, the word 'then' merely indicates the time of enjoyment and has no significance in relation to the rule stated in this Section.

"The fact that the members of the described group are to be determined in accordance with a statute governing the intestate succession of property, as such statute shall provide at some designated time subsequent to the death of the ancestor, tends to establish that the statute is to be applied as of the time when its provisions are to be ascertained and not as of the death of the designated ancestor. The unlikelihood that the conveyor would intend a statute to be applied as of a date prior to the date when the statute becomes effective . . . justifies this result." "A specific requirement that the 'heirs . . . of A' be picked in accordance with the terms of the statute existing at the time of distribution, or be picked 'as if A had then died' serves to postpone the time for their ascertainment." (3 Powell on Real Property, § 375, pp. 223-224.)

The following cases are illustrative of the above rules:

In *Welch* v. *Howard* (1917) 227 Mass. 242 [116 N.E. 492], a testamentary trust provided that upon the death of the last survivor of the testator's wife and children "my trustees shall divide and distribute all said trust property and estate among my heirs at law, according to the statutes which shall *then be in force* in said commonwealth, regulating the distribution of intestate estates, . . ." (Italics added.) It was held that distribution of the remainder was to be made to those persons who would have been the heirs of law of the testator had he died immediately after the death of the last surviving life tenant.

In *Lemmon* v. *Wilson* (1944) 204 S.C. 50 [28 S.E.2d 792], a testamentary trust provided for the payment of income to the testator's daughter and that upon her death without issue the trust fund "shall be distributed among my heirs-at-law under the statute of distribution of this State, *then of force.*" (Italics added.) The husband of the deceased life tenant contended that heirs were to be determined at the time of the testator's death and he, being the heir of this deceased heir was entitled to her vested interest in the remainder. The court rejected his contention and held the words of futurity clearly showed the testator's intent to have the class ascertained at the death of the life tenant and not before.

In *In re Backman's Will* (1949) 195 Misc. 183 [89 N.Y.S.2d

459] the testator created a life estate for his widow out of the residue. The will contained the following provision: "Upon the death of my said wife, Fanny, I direct my trustees to divide the said estate so held in trust and distribute same among my next of kin in the manner provided by the statutes prevailing in the State of New York *at the time of her death* and pertaining to the distribution of intestate property." (Italics added.) In noting that neither the estate of the wife nor that of the testator's mother, who had survived him but predeceased the life tenant, could take any portion of the remainder, the court quoted from the case of *In re Cooper's Will,* 109 App.Div. 566 [96 N.Y.S. 562] to the following effect: " 'Words of futurity are annexed to the gift, and it is plain, we think, that the testator did not intend that there should be an ascertainment of the persons who would take ultimately until after the death of the life beneficiary and the expiration of the trust for her benefit.' " (89 N.Y.S.2d at p. 462.)

In *Bergendahl* v. *Stiers* (1956) 8 Ill.2d 257 [133 N.E.2d 280], the testator devised and bequeathed real and personal property to his wife for life "and at her death said Real Estate and Personal Property shall become the property of my heirs in body then living." It was held that the word "then" referred to the phrase "at her death" and that the "heirs in body" were to be ascertained at the time of the death of the wife life tenant.

In *O'Farrell* v. *American Trust Co.* (1957) 149 Cal.App.2d 691 [309 P.2d 60], an *inter vivos* trust provided that "[u]pon the death of said [wife life tenant] . . . said trust shall terminate and all property then in said trust . . . shall be freed therefrom and if said trustor shall then be dead, shall be subject to disposition according to the probate law of the State of California in force at that time." The court pointed out that the above clause spoke in futuro, referred to the probate law as of the time of the wife's death, and meant, in effect, that the law relating to wills, if the trustor died testate, or the statute of succession, if he died intestate, would apply as of the death of such life tenant.

In *Rhode Island Hospital Trust Co.* v. *Arnold* (1957) 86 R.I. 38 [133 A.2d 729, 65 A.L.R.2d 1400] an *inter vivos* trust contained the following provision: "If, however, either or both the said Amey or Frances shall be living at the time of the decease of the said Harriet S. Arnold, then said trust shall continue until the death of the survivor, and upon the

death of said survivor said trust property and estate shall be conveyed one-half (½) to the heirs at law of the said Amey Arnold, in accordance with the statutes *then in force* in the State of New York, in the case of persons dying intestate, and one-half (½) to the heirs at law of the said Frances Arnold, in accordance with the statutes *then in force* in the State of New York in the case of persons dying intestate." (Italics added.) It was held that the heirs of the first of the above two persons to die were to be determined as of the date of death of the survivor since the two "thens" referred to the phrase "upon the death of said survivor."

In *In re Herrick's Trust* (1958) 9 Misc.2d 938 [171 N.Y.S. 2d 304], the donor of a trust in a separate document simultaneously delivered with the trust agreement, directed that upon the termination of the trust: "return the principal of the trust fund . . . to me, or, if I be not then living, to such person or persons as would under the intestacy laws of the State of New York be entitled to personal property comprised in my estate." It was held that the last phrase (beginning with the words "to such person") related back to the words "then living" and designated the takers at the date of the termination of the trust.

In the case before us, both decrees of distribution expressly provide that "upon the death of said Louis C. Miner" the balance of the trust estate shall be paid and delivered to the heirs of J. U. Miner "in accordance with the laws of succession of the State of California, *then in force.* . . ." (Italics added.) The word "then" obviously refers to the phrase "upon the death of said Louis C. Miner." Obviously "then" is used as an adverb of time. It is clear from the entire provision that the members of the class of heirs who are to take the property are determined by applying the statute of succession in force at the death of the life tenant. The plain meaning of the provision is that such statute is to be applied *as of that time.*

We are of the opinion that the above clause is clear and unambiguous. Appellant's suggestion that the clause is susceptible of other reasonable interpretations must fall. Contrary to appellant's claim, there is just no reasonable basis for concluding that the statute of succession in effect in 1961 should be retroactively applied to the circumstances existing at the time of the testator's death in 1937. Appellant furnishes neither analysis nor authority for this highly unusual method of determining heirs. Nor is there any basis for con-

cluding, as appellant urges, that the heirs are to be determined as of the date of the testator's death, leaving the 1961 statute to regulate the disbursements. We are not favored with any authority for this alternate suggestion. Indeed it is completely repugnant to the operative provision, which clearly indicates that the takers of the property are to be ascertained at the time of distribution. Nowhere either in the decrees or in the will is there any language vesting ownership in heirs in 1937.

The trial court properly applied section 222 as of the date of death of Louis C. Miner. As a result, the heirs of J. U. Miner were determined as if he had died immediately after Louis. Since Louis died without issue, such heirs were the appellant and the three respondents, all in the same degree of kindred. The trust estate was therefore properly distributed to such four persons in equal shares.

The order is affirmed.

Bray, P. J., and Molinari, J., concurred.